**FILED**

**NOVEMBER 9, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATIONAL CITY MORTGAGE CO., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) Case No.: |
| CREATIVE FINANCIAL SOLUTIONS, INC.; | ) |
| EUGENE BENNETT; CHARLES WHITE; | ) Jury Trial Demanded |
| SHELLY V. ROLLINSON; and TOMMY G. | ) |
| PILILIMIS | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**07 C 6380**

**JUDGE BUCKLO
MAGISTRATE JUDGE COLE**

## COMPLAINT

National City Mortgage Co. d/b/a Accubanc Mortgage Corporation (hereinafter referred to as "Plaintiff" or "National City"), by and through its undersigned counsel, and for its Complaint against Defendants Creative Financial Solutions, Inc. ("Creative Financial"), Eugene Bennett, Charles White, Shelly V. Rollinson, and Tommy G. Pililimis, (hereinafter referred to collectively as "Defendants"), states as follows:

### THE PARTIES

1.     Plaintiff National City is an Ohio company with its principal place of business in the State of Ohio.

2.     Upon information and belief, Defendant Creative Financial is an Illinois corporation with its principal place of business in the State of Illinois. Upon information and belief, Creative Financial is a mortgage broker engaged primarily in the business of originating, processing, and selling residential mortgage loans.

3.     Upon information and belief, Defendant Eugene Bennett is an Illinois resident and was, at all times relevant to this action, the Owner and President of Creative Financial.

4.     Upon information and belief, Defendant Charles White is an Illinois resident and was, at all times relevant to this action, a loan officer employed by Creative Financial.

5.     Upon information and belief, Defendant Shelly V. Rollinson is an Illinois resident and was, at all times relevant to this action, a certified real estate appraiser.

6.     Upon information and belief, Defendant Tommy G. Pililimis is an Illinois resident and was, at all times relevant to this action, a residential real estate appraiser.

## JURISDICTION AND VENUE

7.     Each of the Defendants identified above are, upon information and belief, citizens of the State of Illinois and, as such, are subject to personal jurisdiction in this Court.

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9.     Venue is properly established in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) because all of the Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

### A.     The Wholesale Broker Agreement

10.     On May 15, 2001, National City (d/b/a Accubanc Mortgage Corporation) and Creative Financial entered into a Wholesale Broker Agreement (the "Agreement"), whereby Creative Financial agreed to submit for purchase, and National City agreed to accept for purchase, certain mortgage loans originated by Creative Financial.

11.     In the Agreement, Creative Financial expressly represented and warranted that it "has disclosed all facts which are material to the subject matter of the Agreement and any mortgage loan application to [National City].     Neither this Agreement nor any loan

2

documentation submitted to [National City] contains any misstatement of a material fact or omits to state a material fact necessary to make the statements contained therein not misleading."

12.    In addition, Creative Financial expressly represented and warranted that "[e]ach document delivered by [Creative Financial] to [National City] is complete and accurate as to information within and contains no misleading information, has been prepared, executed and copies delivered as required by law, and all signatures and initials therein are authorized and genuine.  Furthermore all information reported by the applicant to [Creative Financial] has been completely and accurately submitted to Purchaser."

13.    Furthermore, Creative Financial expressly represented and warranted that it "has no knowledge of any adverse information concerning applicant or any aspect of the submitted mortgage loan application which is not reflected in any of the written documents submitted to [National City] by [Creative Financial]."

14.    Lastly, the parties' Agreement expressly stated:

Repurchase will be required if [National City] determines, at any time, that any representation made by [Creative Financial] with respect to any mortgage loan application submitted was untrue when made or any warranty or term thereof has been breached.

[Creative Financial] shall repurchase within seven (7) calendar days of notice any loan purchased by [National City] hereunder for an amount equal to the sum of, as of the time of repurchase, (a) the unpaid balance of, plus accrued interest on, the Loan, (b) the amount of any premium or sum in excess of the principal balance of the Loan paid by [National City] to [Creative Financial], (c) any servicing premium or other premium in excess of the Loan paid by [National City] to [Creative Financial], (d) the aggregate amount of any advances made by [National City] for the account of the mortgagor and interest thereon at the interest rate set forth in the promissory note and (e) any attorney's fees, legal expenses, court costs or other expenses which may have been incurred or expended by or on behalf of [National City] in connection with said loan and interest thereon at the interest rate set forth in the promissory note.

3

[National City], at its sole option, may allow for indemnification against losses as a remedy as opposed to the outright repurchase of a loan. Losses will be defined as any cost incurred by [National City] and will include, but not be limited to, put-of-pocket costs, servicing premium, attorney's fees, etc.

**B.**     **The Defective Mortgage Loans**

15.     Notwithstanding the above-referenced representations and warranties, Creative Financial, by, through and/or in conspiracy with its agents/employees, officers, and contracted appraisers, negligently and/or intentionally provided false information to National City regarding certain mortgage loans purchased by National City.

16.     As demonstrated in detail below, these misrepresentations included, among other things, false statements regarding the true market value of the properties securing the loans, false statements regarding the borrowers' intent to occupy the subject properties as a primary residence, and false information regarding the borrowers' income, assets and/or employment status. Creative Financial, by through and/or in conspiracy with its officers and/or agents/employees, also failed to disclose outstanding borrower debts/liabilities, and Creative Financial affirmatively concealed the problems with the loans by, among other things, creating and/or providing fabricated/false documents to National City and repeatedly denying there was anything wrong with the loans and denying that it was obligated to repurchase the loans.

17.     As a result of these misrepresentations and/or omissions, the following mortgage loans purchased by National City are impermissibly deficient and ripe for repurchase and/or indemnification as provided in the Agreement.

The R.D. Bradley Loan

18.     On or about April 13, 2005, Creative Financial originated a $145,000.00 loan for borrower R.D. Bradley, a/k/a R. Bradley, a/k/a Rita M. Bradley ("Bradley") in connection with Bradley's purchase of real property located at 3718 Cedar Road, Richton Park, Illinois 60471.

4

Creative Financial assigned the Bradley loan to National City following the closing, and National City subsequently transferred said loan to Merrill Lynch.

19.    Upon information and belief, the Bradley loan application contained material misrepresentations regarding Bradley's intent to occupy the subject property as her primary residence.  Moreover, upon information and belief, the seller and Bradley engaged in a non-arms length transaction as the two are related by family.

20.    As a result of some or all of these deficiencies, National City was obligated to repurchase the Bradley loan from Merrill Lynch.  The Bradley loan was foreclosed upon, the subject property sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

The Harry Brales Loan

21.    On or about October 8, 2002, Creative Financial originated a $185,250.00 loan for borrower Harry Brales ("Brales") in connection with Brales' purchase of real property located at 1648 N. Menard Avenue, Chicago, Illinois 60639.  Creative Financial assigned the Brales loan to National City following the closing, and National City subsequently transferred said loan to Federal Home Loan Mortgage Company ("FHLMC").

22.    Upon information and belief, the Brales loan application contained material misrepresentations regarding Brales' income, assets, and his intent to occupy the subject property as his primary residence.  The loan documents also failed to disclose that Brales obtained a separate mortgage one month prior to closing the subject loan.  Shelly V. Rollinson performed the real estate appraisal of the subject property in connection with the Brales loan.  Upon information and belief, her appraisal improperly overstated the value of the subject property.

23.    As a result of some or all of these deficiencies, National City was obligated to repurchase the Brales loan from FHLMC.  The Brales loan was foreclosed upon, the subject

property sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

<u>The Pamela Bynum Loan</u>

24.     On or about May 30, 2002, Creative Financial originated a $123,500.00 loan for borrower Pamela Bynum ("Bynum") in connection with Bynum's purchase of real property located at 7230 S. Perry Avenue, Chicago, Illinois 60621.  Creative Financial assigned the Bynum loan to National City following the closing, and National City subsequently transferred said loan to FHLMC.

25.     Upon information and belief, the Bynum loan application contained material misrepresentations regarding Bynum's income and her assets.  The loan documents also failed to disclose two separate mortgage loans obtained by Bynum the same month as the subject loan. Shelly V. Rollinson performed the real estate appraisal of the subject property in connection with the Bynum loan.  Upon information and belief, her appraisal improperly overstated the value of the subject property.

26.     As a result of some or all of these deficiencies, National City was obligated to repurchase the Bynum loan from FHLMC.  The Bynum loan was foreclosed upon, the subject property sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

<u>The Florentio Chaidez Loan</u>

27.     On or about April 30, 2003, Creative Financial originated a $198,000.00 loan for borrower Florentio Chaidez ("Chaidez") in connection with Chaidez' purchase of real property located at 7159 S. Normal Blvd., Chicago, Illinois 60621.  Creative Financial assigned the Chaidez loan to National City following the closing, and National City subsequently transferred said loan to U.S. Bank.

6

28.     Upon information and belief, the Chaidez loan documents contained material misrepresentations regarding Chaidez's income and the rental occupants of the subject property. The loan documents also failed to disclose a separate mortgage loan obtained by Chaidez the same month as the subject loan.   Tommy G. Pililimis performed the real estate appraisal of the subject property in connection with the Chaidez loan.  Upon information and belief, his appraisal improperly overstated the value of the subject property.

29.     As a result of some or all of these deficiencies, National City was obligated to repurchase the Chaidez loan from U.S. Bank.  The Chaidez loan was foreclosed upon, the subject property sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

<u>The Antonio Douvlis Loan</u>

30.     On or about June 27, 2003, Creative Financial originated a $166,250.00 loan for borrower Antonio Douvlis ("Douvlis") in connection with Douvlis' purchase of real property located at 7014 S. Winchester Avenue, Chicago, Illinois 60636.  Creative Financial assigned the Douvlis loan to National City following the closing, and National City subsequently transferred said loan to Federal National Mortgage Association ("Fannie Mae").

31.     Upon information and belief, the Douvlis loan documents contained material misrepresentations regarding Douvlis' income and assets.  The loan documents also failed to disclose a separate mortgage loan obtained by Douvlis one month prior to the subject loan.  In addition, Tommy G. Pililimis performed the real estate appraisal of the subject property in connection with the Douvlis loan.   Upon information and belief, his appraisal improperly overstated the value of the subject property.

32.     As a result of some or all of these deficiencies, National City was obligated to repurchase the Douvlis loan from Fannie Mae.  The Douvlis loan was foreclosed upon, the

subject property sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

The Amber Estes Loan

33.    On or about July 7, 2003, Creative Financial originated a $128,250.00 loan for borrower Amber Estes ("Estes") in connection with Estes' purchase of real property located at 334 W. 59th Place, Chicago, Illinois 60621.  Creative Financial assigned the Estes loan to National City following the closing, and National City subsequently transferred said loan to FHLMC.

34.    Upon information and belief, the Estes loan documents contained material misrepresentations regarding Estes' income, her assets, her employment status, and her intent to occupy the subject property as a primary residence.  In addition, Shelly V. Rollinson performed the real estate appraisal of the subject property in connection with the Estes loan.  Upon information and belief, her appraisal improperly overstated the value of the subject property.

35.    As a result of some or all of these deficiencies, National City was obligated to repurchase the Estes loan from FHLMC.  The Estes loan went into default, the subject property was sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

The Omari Houston Loan

36.    On or about September 4, 2001, Creative Financial originated a $148,500.00 loan for borrower Omari Houston ("Houston") in connection with Houston's purchase of real property located at 4528 W. Jackson Blvd, Chicago, Illinois 60624.  Creative Financial assigned the Houston loan to National City following the closing thereof and National City transferred said loan to GMAC.

8

37.    Upon information and belief, the Houston loan documents contained material misrepresentations regarding Houston's income, his assets, and his employment status.  In addition, upon information and belief, Houston did not have legal title to the subject property and the actual owners were the subject of a fraudulent property transfer scheme involving Houston.

38.    As a result of some or all of these deficiencies, NCM was obligated to repurchase the Houston loan from GMAC.  Because of the above-referenced title deficiencies, the title insurance company paid off some but not all of National City's losses associated with the Houston loan.  Because of the above-referenced loan deficiencies, Creative Financial is obligated to repurchase the Houston loan and/or reimburse National City for its remaining losses sustained in connection therewith.

<u>The Derrick Kee Loan</u>

39.    On or about June 19, 2001, Creative Financial originated a $101,850.00 loan for borrower Derrick Kee ("Kee") in connection with Kee's purchase of real property located at 5801 S. May, Chicago, Illinois 60621.  Creative Financial assigned the Kee loan to National City following the closing, and National City subsequently transferred said loan to Charter One Bank.

40.    Upon information and belief, Charles White was the loan officer responsible for the aforementioned loan.  With that said, the Kee loan documents contained, upon information and belief, material misrepresentations regarding Kee's assets and his employment.  In addition, the pre-loan appraisal of the subject property improperly overstated the value thereof.

41.    As a result of some or all of these deficiencies, National City was obligated to repurchase the Kee loan from Charter One Bank.  As a result of these same deficiencies, Creative Financial is, in turn, contractually obligated to repurchase the Kee loan from National City.

<u>The George Koustas Loan</u>

9

42.     On or about March 13, 2003, Creative Financial originated a $117,000.00 loan for borrower George Koustas ("Koustas") in connection with Koustas' purchase of real property located at 7319 S May Street, Chicago, Illinois 60621. Creative Financial assigned the Koustas loan to National City following the closing, and National City subsequently transferred said loan to Fannie Mae.

43.     Upon information and belief, the Koustas loan documents contained material misrepresentations regarding Koustas' income and employment status. In addition, the subject property's appraisal improperly overstated the value of the subject property and was, upon information and belief, forged.

44.     As a result of some or all of these deficiencies, National City was obligated to repurchase the Koustas loan from Fannie Mae. The Koustas loan went into default, the subject property was sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

<u>The Deidra Langford Loan</u>

45.     On or about September 13, 2001, Creative Financial brokered a $123,500.00 loan for borrower Deidra Langford ("Langford") in connection with Langford's purchase of real property located at 8000 South Ingleside, Chicago, Illinois 60619. Creative Financial assigned the Langford loan to National City following the closing, and National City subsequently transferred said loan to GMAC-RFC.

46.     Upon information and belief, the Langford loan application contained material misrepresentations regarding Langford's assets, specifically with respect to her alleged account at TCF Bank. In furtherance of this misrepresentation, the verification of deposit relating to Langford's alleged account at TCF Bank was, upon information and belief, fabricated.

10

47.    As a result of this asset misrepresentation, National City was obligated to repurchase the Langford loan from GMAC-RFC. For the same reason, Creative Financial is, in turn, contractually obligated to repurchase the Langford loan from National City.

The George Limperis Loan

48.    On or about May 1, 2003, Creative Financial originated a $126,350.00 loan for borrower George Limperis ("Limperis") in connection with Limperis' purchase of real property located at 6016 S. May, Chicago, Illinois 60621. Creative Financial assigned the Limperis loan to National City following the closing, and National City subsequently transferred said loan to U.S. Bank.

49.    Upon information and belief, the Limperis loan documents contained material misrepresentations regarding Limperis' income and employment status. The loan documents also failed to disclose a separate mortgage loan obtained by Limperis a month prior to the subject loan. Tommy G. Pililimis performed the real estate appraisal of the subject property in connection with the Limperis loan. Upon information and belief, his appraisal improperly overstated the value of the subject property.

50.    As a result of some or all of these deficiencies, National City was obligated to repurchase the Limperis loan from U.S. Bank. The Limperis loan went into default, the subject property was sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

The Clarence Moore Loan

51.    On or about September 13, 2001, Creative Financial originated a $493,850.00 loan for borrower Clarence Moore ("Moore") in connection with Moore's purchase of real property located at 20003 Mohawk Trail, Olympia Fields, Illinois 60564. Creative Financial

11

assigned the Moore loan to National City following the closing, and National City subsequently transferred said loan to Wells Fargo Bank.

52.    Upon information and belief, Moore knowingly acted as a strawbuyer in a disguised refinance on behalf of Azerena White, the seller and cousin of his wife, who could not qualify for the loan herself.  Upon information and belief, title to the subject property was to be re-conveyed to Azerena White after six months and at no time did Moore intend to occupy the subject property or make mortgage payments thereon.

53.    National City became obligated to repurchase the Moore loan from Wells Fargo. The Moore loan went into default, the subject property was sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

<u>The Reynold Randle Loan</u>

54.    On or about August 8, 2003, Creative Financial originated a $108,300.00 loan for borrower Reynold Randle ("Randle") in connection with Randle's purchase of real property located at 12010 S. Harvard, Chicago, Illinois 60628.  Creative Financial assigned the Randle loan to National City following the closing, and National City subsequently transferred said loan to Fannie Mae.

55.    Upon information and belief, the Randle loan document contained material misrepresentations regarding both Randle's income and assets.

56.    As a result of some or all of these deficiencies, National City was obligated to repurchase the Randle loan from Fannie Mae.  The Randle loan went into default, the subject property was sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

<u>The Dorothy Satterfield Loan</u>

12

57.    On or about December 11, 2002, Creative Financial originated a $147,250.00 loan for borrower Dorothy Satterfield ("Satterfield") in connection with Satterfield's purchase of real property located at 7331 S. Talman Avenue, Chicago, Illinois 60629.   Creative Financial assigned the Satterfield loan to National City following the closing, and National City subsequently transferred said loan to Fannie Mae.

58.    Upon information and belief, the Satterfield loan document contained material misrepresentations regarding Satterfield's income and employment.   In addition, the loan documents also failed to disclose that Satterfield obtained separate mortgage loan with Select Portfolio prior to closing the subject loan.

59.    As a result of some or all of these deficiencies, the mortgage insurance company, PMI Mortgage Insurance Company, cancelled the mortgage insurance.   Later, Fannie Mae made a claim for NCM to pay the expected mortgage insurance claim funds which NCM  paid.  NCM has not been reimbursed by Creative Financial the amount of money it paid to FNMA, and thus, NCM has sustained damage in connection therewith in an amount to be determined at trial.

The Darius Shine Loan

60.    On or about May 23, 2003, Creative Financial originated a $394,250.00 loan for borrower Darius Shine ("Shine") in connection with Shines' purchase of real property located at 3939 S. Indiana Avenue, Chicago, Illinois 60653.   Creative Financial assigned the Shine loan to National City following the closing, and National City subsequently transferred said loan to Wachovia Bank ("Wachovia").

61.    Upon information and belief, the Shine loan documents contained material misrepresentations regarding Shine's income, his employment, and his intent to occupy the subject property as a primary residence.

13

62.    As a result of some or all of these deficiencies, National City was obligated to repurchase the Shine loan from Wachovia. The Shine loan went into default, the subject property was sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

<u>The Dominique Talley Loan</u>

63.    On or about January 16, 2003, Creative Financial originated a $146,200.00 loan for borrower Dominique Talley ("Talley") in connection with Talley's purchase of real property located at 1547 S. St. Louis Avenue, Chicago, Illinois 60624. Creative Financial assigned the Talley loan to National City following the closing, and National City subsequently transferred said loan to Fannie Mae.

64.    Upon information and belief, the Talley loan documents contained material misrepresentations regarding Talley's income and his intent to occupy the subject property as a primary residence. In addition, upon information and belief, the purported seller of the subject property did not have legitimate title to the property at the time of Talley's alleged purchase thereof.

65.    The Talley loan went into default and, as a result of its deficiencies, National City was obligated to repurchase said loan from Fannie Mae. Because of the above-referenced title issues, the title insurance company ultimately paid off some but not all of National City's losses associated with the Talley loan. As demonstrated in detail below, Creative Financial is obligated to repurchase the Talley loan and/or reimburse National City for its remaining losses sustained in connection therewith.

<u>The George Vasili Loan</u>

66.    On or about June 25, 2003, Creative Financial originated a $209,000.00 loan for borrower George Vasili ("Vasili") in connection with Vasili's purchase of real property located

14

at 7121 S. Champlain Avenue, Chicago, Illinois 60619. Creative Financial assigned the Vasili loan to National City following the closing, and National City subsequently transferred said loan to FHLMC.

67.    Upon information and belief, the Vasili loan documents contained material misrepresentations regarding Vasili's income and assets. In addition, Shelly V. Rollinson performed the real estate appraisal of the subject property in connection with the Vasili loan. Upon information and belief, her appraisal improperly overstated the value of the subject property.

68.    As a result of some or all of the above-referenced deficiencies, National City was obligated to repurchase the Vasili loan from FHLMC. Because of these same deficiencies, Creative Financial is, in turn, contractually obligated to repurchase the Vasili loan from National City and/or reimburse National City for any losses sustained in connection therewith.

<u>The Elnora White Loan</u>

69.    On or about January 31, 2003, Creative Financial originated a $199,500.00 loan for borrower Elnora White ("White") in connection with White's purchase of real property located at 952 N. St Louis, Chicago, Illinois 60651. Creative Financial assigned the White loan to National City following the closing, and National City subsequently transferred said loan to Fannie Mae.

70.    Upon information and belief, the White loan documents contained material misrepresentation regarding White's income and her intent to occupy the subject property as a primary residence. In addition, upon information and belief, Elnora White is related to Creative Financial loan officer Charles White and was acting as a strawbuyer with respect to the purchase of the subject property. Lastly, the subject property's appraisal improperly inflates its value and was, upon information and belief, forged.

71.    As a result of some or all of these deficiencies, National City was obligated to repurchase the White loan from Fannie Mae.  The White loan went into default, the subject property was sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

<u>The Johnny Wilkins Loan</u>

72.    On or about May 2, 2003, Creative Financial originated a $99,000.00 loan for borrower Johnny Wilkins ("Wilkins") in connection with Wilkins' purchase of real property located at 12054 S. Lowe Avenue, Chicago, Illinois 60628.  Creative Financial assigned the Wilkins loan to National City following the closing, and National City subsequently transferred said loan to FHLMC.

73.    Upon information and belief, the Wilkins loan documents contained material misrepresentations regarding Wilkins' assets.  Shelly V. Rollinson performed the real estate appraisal of the subject property in connection with the Wilkins loan.  Upon information and belief, her appraisal improperly overstated the value of the subject property.

74.    As a result of some or all of these deficiencies, National City was obligated to repurchase the Wilkins loan from FHLMC.  Because of these same deficiencies, Creative Financial is, in turn, contractually obligated to repurchase the Wilkins loan from National City and/or reimburse National City for any losses sustained in connection therewith.

<u>The Lakinya Woodland Loan</u>

75.    On or about March 10, 2003, Creative Financial originated a $80,750.00 loan for borrower Lakinya Woodland ("Woodland") in connection with Woodland's purchase of real property located at 8121 S. Normal Avenue, Chicago, Illinois 60620.  Creative Financial assigned the Woodland loan to National City following the closing, and National City subsequently transferred said loan to Fannie Mae.

16

76.     Upon information and belief, the Woodland loan documents contained material misrepresentations regarding Woodland's income.    Upon information and belief, the loan documents also failed to disclose that Woodland obtained a separate mortgage loan two months prior to closing the subject loan.    Shelly V. Rollinson performed the real estate appraisal of the subject property in connection with the Woodland loan.    Upon information and belief, her appraisal improperly overstated the value of the subject property.

77.     As a result of some or all of these deficiencies, National City was obligated to repurchase the Woodland loan from Fannie Mae.    The Woodland loan went into default, the subject property was sold at a loss, and National City ultimately sustained damages in connection therewith in an amount to be determined at trial.

**C.     Creative Financial's Failure to Comply With Its Repurchase Obligations**

78.     As a result of the foregoing deficiencies and pursuant to the parties' Agreement, National City made demand upon Creative Financial to repurchase each of the above-referenced mortgage loans and/or otherwise reimburse National City for its losses sustained in connection therewith.

79.     As of this filing, however, Creative Financial has refused to comply with its contractual repurchase and/or reimbursement obligations, and the time for doing so as provided in the parties' Agreement has long since expired.

**COUNT I – BREACH OF CONTRACT**
**(Against Creative Financial)**

80.     National City adopts and incorporates by reference its allegations in the above paragraphs.

17

81.    Creative Financial expressly represented in the parties' Agreement that those loans submitted to National City were accurate and contained no misrepresentations or omissions of material fact.

82.    Creative Financial further represented in the parties' Agreement that it had no knowledge of any adverse information concerning any of the applicants which was not reflected in the written loan documents submitted to National City.

83.    As demonstrated herein, however, Creative Financial breached the parties' Agreement by providing National City with the above-referenced loans, all of which contained misrepresentations or omissions of material fact and/or involved applicants with adverse information that was not reflected in the loan documents.

84.    Furthermore, Creative Financial was contractually obligated under the parties' Agreement to repurchase within seven (7) calendar days of written notice any mortgage loan that contained such misrepresentations or omissions and/or which failed to satisfy Creative Financial's representations and warranties as provided in the Agreement.

85.    As demonstrated above, each of the above-referenced loans contained misrepresentations or omissions of material fact and/or failed to satisfy Creative Financial's representations and warranties as provided in the Agreement.

86.    Creative Financial breached the parties' Agreement by failing to timely comply with National City's demands that it repurchase the above-referenced defective mortgage loans and/or reimburse National City for the substantial losses sustained in connection therewith.

87.    As a direct and proximate result of these breaches, National City has sustained damages in an amount to be determined at trial.

18

WHEREFORE, National City demands judgment against Creative Financial for compensatory damages in an amount to be determined at trial plus pre-judgment interest, attorney's fees, costs, expenses, and any further relief deemed just and warranted.

## COUNT II – SPECIFIC PERFORMANCE
### (Against Creative Financial)

88.     National City adopts and incorporates by reference its allegations in the above paragraphs.

89.     Creative Financial was contractually obligated under the parties' Agreement to repurchase within seven (7) calendar days of written notice any mortgage loan that contained misrepresentations or omissions of material fact and/or which failed to satisfy Creative Financial's representations and warranties as provided in the Agreement.

90.     As demonstrated herein, Creative Financial has breached the parties' Agreement by failing to timely comply with National City's demands that it repurchase the above-referenced loans and/or reimburse National City for the substantial losses sustained in connection therewith.

91.     National City has fully performed under the contract and has taken all necessary steps to trigger Creative Financial's repurchase obligations with respect to the above-referenced loans.

92.     Moreover, National City is ready, willing and able to make the above-referenced loans available for repurchase and/or reimbursement.

93.     National City has no adequate remedy at law for Creative Financial's breach of its contractual obligation to repurchase the above-referenced loans and, as such, is entitled to a decree of specific performance relating thereto.

94.     Indeed, the parties' Agreement specifically states "that, in the event of [Creative Financial's] insolvency, repudiation of this Agreement of failure to perform any of its obligations

to [National City], [National City] shall be entitled to the right of specific performance of the commitments."

WHEREFORE, National City demands judgment against Creative Financial for specific performance of its contractual obligation to repurchase, or reimburse National City for, the above-referenced loans plus judgment interest, attorney's fees, costs, expenses, and any further relief deemed just and warranted.

### COUNT III – FRAUD
**(Against Creative Financial and Charles White)**

95.    National City adopts and incorporates by reference its allegations in the above paragraphs.

96.    As described herein, Defendants Creative Financial and Charles White made and/or provided false and misleading statements of material fact in connection with the above-referenced mortgage loans.    Creative Financial and Charles White's affirmative misrepresentations included, among other things, false information regarding the true market value of the properties securing the subject loans, false information regarding the borrowers' intent to occupy the subject properties as a primary residence, and false information regarding the borrowers' income, assets and/or employment status.    Creative Financial also failed to disclose and/or concealed outstanding borrower liabilities.

97.    These false and misleading statements and/or omissions of material fact were made/provided knowingly or recklessly and with the intent that National City rely upon the same in deciding whether to approve, fund and/or purchase the above-referenced mortgage loans.

98.    National City did justifiably and reasonably rely upon these false and misleading statements or omissions of material fact in approving, funding and/or purchasing the above-referenced mortgage loans.

99.    As a direct and proximate result of Creative Financial and Charles White's fraud, National City has sustained damages in an amount to be determined at trial.

100.    National City, exercising reasonable care, discovered the above-referenced fraud within the statutorily prescribed period for filing this claim.

101.    In addition, the above-referenced fraudulent conduct is sufficiently malicious to support the imposition of punitive damages.

WHEREFORE, National City demands judgment against Defendants Creative Financial and Charles White, jointly and severally, for compensatory damages in an amount to be determined at trial, punitive damages, pre-judgment interest, attorney's fees, costs, and any further relief deemed just and warranted.

### COUNT IV – CIVIL CONSPIRACY
#### (Against All Defendants)

102.    National City adopts and incorporates by reference its allegations in the above paragraphs.

103.    Defendants Creative Financial, Eugene Bennett, Charles White, Shelly V. Rollinson, and Tommy G. Pililimis conspired to defraud National City by misrepresenting and/or concealing material information relating to the above-referenced loans as described herein.

104.    As a direct and proximate result of this conspiracy to defraud, National City has sustained damages in an amount to be determined at trial.

105.    National City, exercising reasonable care, discovered the above-referenced conspiracy to defraud within the statutorily prescribed period for filing this claim.

106.    In addition, Defendants' conspiracy to defraud is sufficiently malicious to support the imposition of punitive damages.

WHEREFORE, National City demands judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determine at trial, punitive damages, pre-judgment interest, attorney's fees, costs, and any further relief deemed just and warranted.

## COUNT V – AIDING AND ABETTING A FRAUD
**(Against All Defendants)**

107.    National City adopts and incorporates by reference its allegations in the above paragraphs.

108.    Defendants Creative Financial, Eugene Bennett, Charles White, Shelly V. Rollinson, and Tommy G. Pililimis each had knowledge of the above-described fraud and knowingly provided substantial assistance in the carrying out thereof.

109.    As a direct and proximate result of Defendants' aiding and abetting the above-described fraud, National City has sustained damages in an amount to be determined.

110.    National City, exercising reasonable care, discovered the above-referenced fraud within the statutorily prescribed period for filing this claim.

111.    In addition, Defendants' aiding and abetting of the above-described fraud is sufficiently malicious to support the imposition of punitive damages.

WHEREFORE, National City demands judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determine at trial, punitive damages, pre-judgment interest, attorney's fees, costs, and any further relief deemed just and warranted.

## COUNT VI – NEGLIGENCE
**(Against Creative Financial)**

112.    National City adopts and incorporates by reference its allegations in the above paragraphs.

113.    Creative Financial owed National City a duty to ensure that any and all information provided to National City in connection with the loans originated by Creative Financial was true and correct.

114.    Creative Financial breached this duty by negligently providing false and misleading information to National City in connection with the above-referenced loans, as described above.

115.    As a direct and proximate result of Creative Financial's negligence, National City has sustained damages in an amount to be determined at trial.

116.    Though National City has at all times exercised due diligence in discovering its claims, Creative Financial fraudulently concealed its negligence from National City by, among other things, creating and/or providing fabricated/false documents to National City and repeatedly denying that there was anything wrong with the loans at issue and denying that it was obligated to repurchase said loans.   As a result thereof, the applicable statue of limitations for the above-referenced negligence claim has been sufficiently tolled as to some or all of the loans at issue.

WHEREFORE, National City demands judgment against Creative Financial for compensatory damages in an amount to be determined at trial plus pre-judgment interest, attorney's fees, costs, and any further relief deemed just and warranted.

## COUNT VII – NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

117.    National City adopts and incorporates by reference its allegations in the above paragraphs.

118.    Defendants owed National City a duty to exercise reasonable care or competence in obtaining and supplying accurate information to National City in connection with the above-referenced loans.

119.    As described herein, Defendants breached this duty by obtaining and supplying false information to National City in connection with the above-referenced loans.

120.    National City justifiably and reasonably relied upon this false/misleading information in deciding to approve, fund and/or purchase the above-referenced loans, and, as a direct result thereof, was damaged in an amount to be determined at trial.

121.    Though National City has at all times exercised due diligence in discovering its claims, Defendants fraudulently concealed their negligence from National City by, among other things, creating and/or providing fabricated/false documents to National City and repeatedly denying that there was anything wrong with the loans at issue and denying that it was obligated to repurchase said loans.   As a result thereof, the applicable statue of limitations for the above-referenced negligent misrepresentation claim has been sufficiently tolled as to some or all of the loans at issue.

WHEREFORE, National City demands judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial plus pre-judgment interest, attorney's fees, costs, and any further relief deemed just and warranted.

## COUNT VIII – NEGLIGENT/WANTON HIRING, RETENTION, TRAINING AND SUPERVISION
### (Against Creative Financial & Eugene Bennett)

122.    National City adopts and incorporates by reference its allegations in the above paragraphs.

24

123.    Creative Financial and Eugene Bennett owed National City a duty to exercise reasonable care in hiring, retaining, training and/or supervising employees to ensure that they were competent to perform the duties required of their employment.

124.    Creative Financial and Eugene Bennett breached this duty by hiring, retaining, and failing to properly train and/or supervise employees who were not competent, and whom Creative Financial and Eugene Bennett knew or should have known were not competent to perform the duties required of their employment.

125.    Specifically, as described herein, Creative Financial and Eugene Bennett's employees negligently or intentionally provided false and misleading information to National City regarding the above-referenced mortgage loans, and National City and was damaged thereby in an amount to be determined at trial.

126.    Creative Financial and Eugene Bennett's wantonness was sufficiently malicious to support the imposition of punitive damages.

127.    Though National City has at all times exercised due diligence in discovering its claims, Creative Financial and Eugene Bennett fraudulently concealed their negligence from National City by, among other things, creating and/or providing fabricated/false documents to National City and repeatedly denying that there was anything wrong with the loans at issue and denying that Creative Financial was obligated to repurchase said loans.   As a result thereof, the applicable statue of limitations for the above-referenced negligent/wanton hiring, retention, training, and supervision claim has been sufficiently tolled as to some or all of the loans at issue.

WHEREFORE, National City demands judgment against Creative Financial and Eugene Bennett for compensatory damages in an amount to be determined at trial plus pre-judgment interest, attorney's fees, costs, and any further relief deemed just and warranted.

## DEMAND FOR TRIAL BY JURY

National City hereby demands a trial by jury of all issues so triable.

**Dated:** November 9, 2007.

Respectfully Submitted,

NATIONAL CITY MORTGAGE CO.

By:___/s/___**Ryan Taylor**_____
        One of Its Attorneys

Thomas K. Hanekamp
Ryan Taylor
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, Suite 2200
233 South Wacker Drive
Chicago, Illinois 60606
(312) 627-4000

David A. Elliott
Matthew T. Mitchell
Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
(205) 251-3000

*Attorneys For Plaintiff*

RT/318743

26