IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL CITY MORTGAGE CO., <br><br> Plaintiff, <br><br> v. <br><br> CREATIVE FINANCIAL SOLUTIONS, LTD.; EUGENE BENNETT; CHARLES WHITE; SHELLY V. ROLLINSON; and TOMMY G. PILILIMIS <br><br> Defendants. | Case No.: 07 C 6380 <br><br> Judge Bucklo <br><br> Magistrate Judge Cole |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff National City Mortgage Co. (hereinafter referred to as "Plaintiff" or "National City"), by and through its undersigned counsel of record, and for its Response in Opposition to Creative Financial Solutions, Ltd. ("Creative Financial") and Eugene Bennett's ("Bennett") (collectively "Defendants") Motion to Dismiss, states as follows:

### I. INTRODUCTION

On or about November 30, 2007, Plaintiff filed its First Amended Complaint in the above-styled action, alleging, *inter alia*, that Defendants tortiously provided it with false information regarding certain mortgage loans and breached their subsequently triggered contractual obligation to repurchase said loans. In conjunction with these allegations, Plaintiff asserted the following causes of action against Defendants: (1) breach of contract; (2) specific performance; (3) fraud; (4) civil conspiracy; (5) aiding and abetting a fraud; (6) negligence; (7) negligent misrepresentation; and (8) negligent hiring, retention, training and supervision.

Despite being provided a twenty-six (26) page Complaint complete with a detailed loan-by-loan breakdown of the misrepresentations and defects at issue, Defendants have moved to

dismiss the present action for failure to state a claim upon which relief can be granted. In their Motion, Defendants argue (1) that Plaintiff failed to plead the "who, what, when, where and how" of its fraud claims; (2) that Illinois does not recognize a separate cause of action for aiding and abetting; (3) that Plaintiff failed to allege the "nature of an agreement" element of its civil conspiracy claim; (4) that Plaintiff's negligence claims are barred by the *Moorman* Doctrine; and (5) that Plaintiff has failed to properly plead its breach of contract and specific performance claims. (*See generally* Motion to Dismiss).

As demonstrated in detail below, however, each of these arguments for dismissal fails as a matter of law. First, Plaintiff sufficiently provided the "who, what, when, where and how" of its fraud claims, and in fact, went above and beyond its Rule 9(b) obligations by providing a loan-by-loan breakdown of the specific misrepresentations and/or omissions at issue. Second, notwithstanding Defendants' allegations to the contrary, Illinois does in fact recognize a separate cause of action for aiding and abetting. Third, Plaintiff sufficiently states a civil conspiracy claim as the agreement can be inferred from the detailed factual allegations in its Complaint. Fourth, Plaintiff's negligence claims are not barred by the *Moorman* doctrine because they fall under Illinois' negligent misrepresentation exception. And finally, Plaintiff sufficiently pled its breach of contract and specific performance claims, and Defendants' assertions to the contrary are disingenuous at best.

## II. STANDARD OF REVIEW

Defendants must satisfy a heavy burden in order to prevail on their Motion to Dismiss. Indeed, their motion may not be granted "unless it appears beyond doubt that [Plaintiff] cannot prove any facts that would support [its] claim for relief." *Gutierrez v. Peters*, 111 F.3d 1364, 1368 (7th Cir. 1997). In reviewing Plaintiff's Complaint under this standard, "all well-pleaded

facts are assumed to be true, and all such facts, as well as the reasonable inferences therefrom, are viewed in the light most favorable to [Plaintiff]." *Id.* at 1368-69.

### III. ARGUMENT

**A. Defendants' Motion to Dismiss as to Plaintiff's Fraud Claims (Counts III, IV, and V) Fails as a Matter of Law.**

    **1. Plaintiff has Sufficiently Pled the "Who, What, When, Where and How" of its Fraud Claims.**

At the outset, Defendants argue that Plaintiff has failed to allege its fraud claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure - the "who, what, when, where and how" of its fraud claims. (Motion to Dismiss, pp. 4-7). Defendants further argue that Plaintiff's allegations made "upon information and belief" are insufficient to support its fraud claims. (*Id.*). As demonstrated below, however, a cursory review of Plaintiff's Complaint reveals that it provided the "who, what, when, where and how" of its fraud claims. (*See generally* Complaint). Moreover, Defendants' "upon information and belief" argument is a technicality that should not sink Plaintiff's Complaint and can be easily rectified if need be. As such, Defendants' Motion to Dismiss is due to be denied in its entirety.

As a preliminary matter, Defendants correctly assert that "a fraud claim must allege facts with particularity pursuant to Rule 9(b)." (Motion to Dismiss, p. 4) (citing *United States of Am. v. Caremark RX, Inc.*, 2006 WL 1519567, at *2 (N.D. Ill. May 30, 2006)). However, Rule 9(b) only requires Plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the Plaintiff" - the "who, what, when, where and how" of its fraud claims. (Motion to Dismiss, p. 4) (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992); *Cathedral Trading, LLC v. The Chicago Board Options Exch.*, 199 F. Supp. 2d 851, 856 (N.D. Ill. 2002)). Moreover, "Rule 9(b) does not require that the complaint explain the

3

plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that the plaintiff claims was fraudulent." *Midwest Commerce Banking v. Elkhart City Centre*, 4 F.3d 521, 523 (7th Cir. 1993). Further, Rule 9(b) only requires that Plaintiff set forth the date and content of the statements or omissions that it claims to be fraudulent - it is "not required to go further and allege the facts necessary to show that the alleged fraud [is] actionable." *Id*. at 524. Lastly, "Rule 9(b) does not require [Plaintiff] to plead facts to which they lack access prior to discovery." *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996).

Even under the most stringent Rule 9(b) standard, Plaintiff has clearly provided the "who, what, when, where and how" of its fraud claims in the present action.[1] For instance, Plaintiff clearly provided the identity of the individuals/entities who made the alleged misrepresentations in this case (i.e. the "who" of its fraud claims). Indeed, as to its Fraud claim (Count III), Plaintiff specifically stated (in parenthesis directly under "Count III - Fraud") that this claim was being asserted "[a]gainst Creative Financial and Charles White" and further explained that "Defendants Creative Financial and Charles White made and/or provided false and misleading statements of material fact in connection with the above-referenced mortgage loans." (First Amended Complaint, p. 20). As to its Civil Conspiracy claim (Count IV), Plaintiff specifically stated (in parenthesis directly under "Count IV - Civil Conspiracy") that this claim was being asserted "[a]gainst [a]ll [d]efendants" and further explained that "Defendants Creative Financial, Eugene Bennett, Charles White, Shelly V. Rollinson, and Tommy G. Pililimis conspired to defraud National City by misrepresenting and/or concealing material information relating to the above-

---

[1] In fact, as stated above, Plaintiff went above and beyond its Rule 9(b) obligations by providing Defendants and this Court with a detailed twenty-six (26) page complaint, specifically outlining each loans' misrepresentations and defects.

4

referenced loans as described herein." (*Id.*, p. 21). Finally, as to its Aiding and Abetting a Fraud claim (Count V), Plaintiff specifically stated (in parenthesis directly under "Count V - Aiding and Abetting a Fraud") that this count was being asserted "[a]gainst [a]ll [d]efendants" and further explained that "Defendants Creative Financial, Eugene Bennett, Charles White, Shelly V. Rollinson, and Tommy G. Pililimis each had knowledge of the above-described fraud and knowingly provided substantial assistance in the carrying out thereof." (*Id.*, p. 22). Plaintiff further established the "who" of its fraud claims by providing a detailed loan-by-loan breakdown, outlining each and every alleged fraudulent actor associated with the loans at issue. (*See generally id.*). Accordingly, Plaintiff has satisfied Rule 9(b)'s particularity requirements in alleging the "who" of its fraud claims.

Plaintiff has also outlined numerous times/dates associated with its fraud claims (i.e. the "when" of its fraud claims). For instance, on pages two (2) and three (3) of its Complaint, Plaintiff specifically provided the date the parties entered into the Wholesale Broker Agreement (i.e. May 15, 2001), wherein Defendant Creative Financial expressly represented and warranted, among other things, that no "loan documentation submitted to [National City] contain[] any misstatement of a material fact" and that "[e]ach document delivered by [Creative Financial] to [National City] is complete and accurate as to information within and contains no misleading information. . . ." (*Id.*, pp. 2-3). Moreover, for each loan transaction at issue, Plaintiff provided the date Defendant Creative Financial originated the loan and general information regarding the assignment of the loan to Plaintiff. (*See generally Id.*). For example, with respect to the R.D. Bradley Loan, Plaintiff provided:

> *On or about April 13, 2005*, Creative Financial originated a $145,000 loan for borrower R.D. Bradley, a/k/a R. Bradley, a/k/a Rita M. Bradley ("Bradley") in connection with Bradley's purchase of real property located at 3718 Cedar Road, Richton Park, Illinois

5

> 60471. *Creative Financial assigned the Bradley loan to National City following the closing*, and National City subsequently transferred said loan to Merrill Lynch.

(*Id.*, pp. 4-5) (emphasis added). Accordingly, Plaintiff has satisfied Rule 9(b)'s particularity requirements in alleging the "when" of its fraud claims.

Furthermore, Plaintiff outlined each and every alleged misrepresentation/omission made in the present action (i.e. the "what" of its fraud claims). Indeed, as a preliminary matter, Plaintiff generally discussed Defendants' misrepresentations, stating in pertinent part:

> these misrepresentations included, among other things, false statements regarding the true market value of the properties securing the loans, false statements regarding the borrower's intent to occupy the subject properties as a primary residence, and false information regarding the borrowers' income, assets and/or employment status. Creative Financial, by through and/or in conspiracy with its officers and/or agents/employees, also failed to disclose outstanding borrower debts/liabilities, and Creative Financial affirmatively concealed the problems with the loans by, among other things, creating and/or providing fabricated/false documents to National City and repeatedly denying there was anything wrong with the loans and denying that it was obligated to repurchase the loans.

(*Id.*, p. 4). In laying out its fraud claims, Plaintiff further provided:

> Creative Financial and Charles White's affirmative misrepresentations included, among other things, false information regarding the true market value of the properties securing the subject loans, false information regarding the borrowers' intent to occupy the subject properties as a primary residence, and false information regarding the borrowers' income, assets and/or employment status. Creative Financial also failed to disclose and/or concealed outstanding borrower liabilities.

(*Id.*, p. 20). Finally, throughout its Complaint, Plaintiff provided a detailed loan-by-loan breakdown of the individual misrepresentations and/or omission at issue. (*See generally Id.*). For example, with respect to the R.D. Bradley Loan, Plaintiff's Complaint stated that "the Bradley loan application contained material misrepresentations regarding Bradley's intent to

occupy the subject property as her primary residence," and "the seller and Bradley engaged in a non-arms length transaction as the two are related by family." (*Id.*, p. 5). Accordingly, Plaintiff has satisfied Rule 9(b)'s particularity requirements in alleging the "what" of its fraud claims.

Plaintiff has also alleged the place of Defendants' misrepresentation (i.e. the "where" of its fraud claims) and the method by which said misrepresentations were communicated (i.e. the "how" of its fraud claims). Indeed, throughout its Complaint, Plaintiff consistently alleges that Defendants' misrepresentations and/or omissions occurred primarily in the loan documentation created during the origination of the loans and submitted to National City following its purchase thereof. For example, with respect to the Harry Brales Loan, Plaintiff stated in pertinent part:

> the Brales *loan application* contained material misrepresentations regarding Brales' income, assets, and his intent to occupy the subject property as his primary residence. The *loan documents* also failed to disclose that Brales obtain a separate mortgage one month prior to closing the subject loan. Shelly V. Rollinson performed the real estate appraisal of the subject property in connection with the Brales loan. Upon information and belief, *her apprais*al improperly overstated the value of the subject property.

(*Id.*, pp. 5-6) (emphasis added). Accordingly, Plaintiff has satisfied Rule 9(b)'s particularity requirements in alleging the "where" and "how" of its fraud claims.

Defendants further argue that "Plaintiff's Complaint is wanting of any factual allegations asserting the 'who, what, when, where and how' of the alleged fraud" because "Plaintiff alleges nothing but conclusions based 'upon information and belief.'" (Motion to Dismiss, p. 5). As previously demonstrated, however, notwithstanding its allegations based "upon information and belief," Plaintiff's Complaint clearly alleges "who, what, when, where and how" of its fraud claims. In fact, Plaintiff went above and beyond its Rule 9(b) obligations by providing a loan-by-loan breakdown, detailing each individual misrepresentation and/or omission at issue.

7

Defendants argue that fraud claims impose a duty of reasonable pre-complaint inquiry not satisfied by rumor or hunch. (*Id.*, p. 5). Plaintiff's allegations of fraud, however, are far from rumors and/or hunches. Indeed, Plaintiff (and its counsel) engaged in an extremely thorough investigation of Defendants and the loans at issue. In doing so, Plaintiff gathered and reviewed thousands of documents in total and several hundred per loan transaction at issue.

Moreover, it is well-settled that, even in the context of fraud, Plaintiff does not have to plead facts which it lacks access prior to discovery. *Katz*, 91 F.3d at 1040. With that said, though Plaintiff possesses documents which overwhelmingly suggest that Defendants were engaged in a fraudulent scheme, it cannot confirm the same until it engages in formal discovery.[2] As such, Plaintiff erred on the side of caution and made certain allegations "upon information and belief." Courts have held, however, that Rule 9(b) does not necessarily preclude allegations made "upon information and belief." *See Entrust Management Co. v. Gold*, 622 F.Supp. 32, 34 (D.C. Ill. 1985) (citation omitted) ("Rule 9(b) 'does not preclude allegations based upon information and belief, . . . but merely requires that the 'circumstances' constituting the fraud shall be stated with particularity' "). Even if this were not the case, Plaintiff's allegations made "upon information and belief" are contained solely in the loan-by-loan breakdown of its Complaint - a section which if omitted would still leave said Complaint with more than sufficient allegations of the "who, what, when, where and how" of its fraud claims.

Finally, a dismissal on the basis of Plaintiff's pleading certain factual allegations "upon information and belief" would be a dismissal of an otherwise valid claim on a technicality. If, however, this Court feels inclined to dismiss Plaintiff's fraud claims on this basis, Plaintiff encourages the Court to do so "without prejudice" so that Plaintiff may amend its complaint to

---

[2] Indeed, that is the very purpose of discovery -- to identify and/or confirm facts that are not known at the initiation of the lawsuit.

8

cure any technical pleading deficiencies. *See See v. Strunk*, 2006 WL 2916819, *9 (C.D. Ill. Oct. 10, 2006) (attached hereto as "Exhibit A") (allowing Plaintiff to amend her complaint to properly assert her dismissed fraud claims); *Miller v. HypoGuard USA, Inc.*, 2005 WL 3481542, *4 (S.D. Ill. Dec. 20, 2005) (attached hereto as "Exhibit B") (dismissing Plaintiffs' fraud claims without prejudice so that they could amend their complaint to properly assert said claims with the requisite particularity).

    2.    **Notwithstanding Defendants' Claims to the Contrary, Illinois Recognizes a Separate Cause of Action for Aiding and Abetting.**

Defendants argue that Plaintiff's claim for aiding and abetting fails because it is not a separate cause of action under Illinois law. (Motion to Dismiss, p. 7). In actuality, however, this Court recently held just the opposite -- "that a cause of action exists under Illinois law for aiding and abetting." *Colman v. Greenfield*, 2005 WL 2592538, *1-3 (N.D. Ill. Oct. 11, 2005) (attached hereto as "Exhibit C") ("Because the court concludes that a cause of action exists under Illinois law for aiding and abetting, the court denies defendants' motion to dismiss. . . ."). In doing so, this Court addressed the cases relied upon by Defendants (*Eastern Trading Co.* and *Hefferman*) and subsequently failed to follow them. *See Colman*, 2005 WL 2592538, at *1-3. Thus, it is clear that a separate cause of action does exist for aiding and abetting and that Defendants' Motion to Dismiss is due to be denied.

    B.    <u>**Plaintiff Has Sufficiently Pled Its Civil Conspiracy Claim.**</u>

Defendants argue that Plaintiff failed to plead an agreement among the defendants to commit fraud, which is "a necessary and important element" of its civil conspiracy claim under Illinois law. (Motion to Dismiss, p. 8). In doing so, however, Defendants completely ignore the substantial precedent stating that an express agreement need not be established at this early stage of the litigation, but rather can be inferred from the factual allegations in the complaint.

9

Accordingly, Defendants' Motion to Dismiss as to Plaintiff's civil conspiracy claims fails as a matter of law.

Defendants cite *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007) for the proposition that Plaintiff must plead and establish, at this initial stage in the litigation, an agreement among the defendants to commit fraud. (*Id.*, p. 8). However, in *Borsellino*, the Court stated:

> [t]o succeed in a claim of civil conspiracy under Illinois law, the plaintiffs must *eventually establish*: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.

477 F.3d at 509 (emphasis added). By stating that Plaintiffs must "eventually establish" the requisite elements of a civil conspiracy claim, even this lone case cited by Defendants suggests that, at this early stage of the litigation, Plaintiff is not expected to know each and every fact regarding Defendants' agreement to defraud Plaintiff.

Moreover, other Illinois cases have expressly held that Plaintiff need not establish an express agreement at this initial stage of the litigation, stating in pertinent part: "[a]n express agreement need not be alleged," and "[f]acts detailing the agreement may be pleaded generally." *Plambeck v. Stone*, 662 F. Supp. 298, 301 (N.D. Ill. 1986); *see also Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983) ("A plaintiff seeking redress need not prove that each participant in a conspiracy knew the 'exact limits of the illegal plan or the identity of all participants therein.' An express agreement among all the conspirators is not a necessary element of a civil conspiracy."). In this vein, the Seventh Circuit Court of Appeals has explicitly held:

> [t]he very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement; circumstantial evidence of the conspiracy, particularly regarding the overt acts performed in furtherance of the conspiracy, is all that

> is ordinarily obtainable before discovery and trial. This is particularly true where, as here, most of the information regarding . . . the formation of the conspiracy are in the hands of the defendant.

*Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985). Finally, this Court has also stated that "a conspiracy claim may be supported by factual allegations from which the existence of an agreement can be inferred." *Carl v. Galuska*, 785 F. Supp. 1283 (N.D. Ill. 1992).

At this early stage in the present action -- before any discovery has been commenced -- Plaintiff cannot be expected to possess definitive information regarding an express agreement between the defendants. As the Seventh Circuit has established, "the very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement." *See Quinones*, 771 F.2d at 291. Rather, it can be inferred from the factual allegations in Plaintiff's Complaint that Defendants agreed/conspired to defraud Plaintiff. Indeed, Plaintiff's Complaint explicitly states that "Defendants Creative Financial, Eugene Bennett, Charles White, Shelly V. Rollinson, and Tommy G. Pililimis conspired to defraud National City by misrepresenting and/or concealing material information relating to the above-referenced loans. . . ." (First Amended Complaint, p. 21). Additionally, Plaintiff's Complaint provided a loan-by-loan breakdown, detailing the tortious scheme Defendants employed to defraud Plaintiff. (*See generally Id.*). In light of the foregoing, Plaintiff's Complaint certainly contained factual allegations from which the existence of an agreement could at the very least be inferred. For this reason alone, Defendants' Motion to Dismiss is due to be denied.

If, however, this Court feels inclined to dismiss Plaintiff's civil conspiracy claim on the technicality that it failed to plead that an express agreement between Defendants, Plaintiff urges this Court to do so "without prejudice" so that Plaintiff might amend its complaint to cure any perceived technical pleading deficiencies.

11

### C. Plaintiff's Negligence Claims Are Not Barred By The *Moorman* Doctrine Because They Fall Under Illinois' Negligent Misrepresentation Exception.

Defendants' next argue that "Plaintiff's alleged damages are purely economic and therefore, its claims in negligence are barred by the *Moorman* Doctrine." (Motion to Dismiss, p. 8). As demonstrated below, however, Plaintiff's negligence claims are not barred by the *Moorman* Doctrine because (1) they fall directly under Illinois's negligent misrepresentation exception; and (2) Defendants owe(d) an extra-contractual duty to Plaintiff.

Defendants correctly point out in their Motion "that *Moorman* prohibits a plaintiff from recovering under a negligence theory for purely economic damages." (Motion to Dismiss, p. 8). Defendants fail to note, however, that there are numerous exceptions to this doctrine. One such exception exists "where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *See First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 843 N.E.2d 327, 337-38 (Ill. 2006). Another is "where a duty arises outside of the contract." *Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863, 874-75 (N.D. Ill. 2002). These exceptions have been applied in the context of real estate brokers. *See, e.g., Duhl v. Nash Realty, Inc.*, 102 Ill. App. 3d 483, 429 N.E.2d 1267 (Ill. Ct. App. 1981). In fact, Illinois courts have repeatedly held that mortgage contracts carry an implied fiduciary duty of professional competence which arises independently of a contract. *See, e.g., Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863 (N.D. Ill. 2002); *Durham v. Loan Store, Inc.*, 2005 WL 2420389 (N.D. Ill. Sept. 30, 2005) (attached hereto as "Exhibit D").

While the above-described exceptions have generally been applied in the mortgagor/mortgagee context, they are equally applicable to the present action. Specifically, Defendants are in the business of originating/brokering mortgage loans, compiling all the

relevant loan documentation, and then supplying that information for the guidance of purchasers such as Plaintiff. Moreover, in light of Plaintiff's reliance upon Defendants to provide accurate loan information, Defendants owe(d) Plaintiff an extra-contractual duty to, in fact, provide accurate information. Plaintiff's negligence claims are, therefore, immune from the *Moorman* doctrine pursuant to the negligent misrepresentation exception and the fact that Defendants owe(d) Plaintiff a contractual duty independent of their agreement. For these reasons, Defendants' Motion to Dismiss is due to be denied.

**D.    Plaintiff Has Properly Pled Its Breach of Contract and Specific Performance Claims.**

Lastly, Defendants try to argue that Plaintiff failed to properly plead its breach of contract and specific performance claims. In support thereof, Defendants claim (1) that Plaintiff failed to plead the existence of consideration; (2) that Plaintiff failed to plead that it provided notice to Defendants of the loan deficiencies; and (3) that Plaintiff "improperly combines all of the misrepresentations with all of the defendants." As demonstrated below, these various arguments are either completely untrue or utterly irrelevant.

First, Plaintiff absolutely pled consideration in the present action. Indeed, on page two (2) of its First Amended Complaint, Plaintiff explicitly stated: "[o]n May 15, 2001, National City (d/b/a Accubanc Mortgage Corporation) and Creative Financial (as successor in interest to Creative Financial Solutions) entered into a Wholesale Broker Agreement (the "Agreement"), *whereby Creative Financial agreed to submit for purchase, and National City agreed to accept for purchase, certain mortgage loans originated by Creative Financial*." (First Amended Complaint, p. 2) (emphasis added). It is well settled in Illinois that mutual and concurrent promises provide sufficient legal consideration for a contract. *See Anderson v. Vrahnos*, 149 Ill. App. 3d 251, 500 N.E.2d 110, 112 (Ill. Ct. App. 1986) ("Mutual and concurrent promises

provide sufficient legal consideration to support each other."); *Leisure v. Smith*, 13 Ill. App. 3d 1070, 302 N.E.2d 177 (Ill. Ct. App. 1973) (same). Thus, it is clear that Plaintiff has sufficiently pled consideration in the present action, and Defendants' assertion to the contrary is disingenuous at best.

Defendants' contention that Plaintiff failed to plead that notice was provided to Defendants of the loan deficiencies is equally disingenuous. Indeed, on page seventeen (17) of its First Amended Complaint (immediately after its loan-by-loan breakdown of the various misrepresentations at issue), Plaintiff explicitly stated:

> 78. As a result of the foregoing deficiencies and pursuant to the parties' Agreement, National City *made demand upon Creative Financial to repurchase each of the above-referenced mortgage loans and/or otherwise reimburse National City for its losses sustained in connection therewith.*

(First Amended Complaint, p. 17) (emphasis added). Accordingly, it is also clear that Plaintiff has sufficiently pled notice in the present action.[3]

Lastly, Defendants argue that Plaintiff "improperly combine[d] all of the misrepresentations with all of the defendants" and, as such, that "it is unclear who the allegations of the breach of contract count are against." (Motion to Dismiss, pp. 10-11). In doing so, Defendants have taken a very simple claim and tried to make it complicated. Indeed, Plaintiff's breach of contract and specific performance claims are, as expressly stated in its Complaint, only asserted against Defendant Creative Financial. (First Amended Complaint, pp. 17-20). Moreover, these claims are based on two simple theories. First, as clearly stated in the Complaint, Defendant Creative Financial breached the parties' contract by providing Plaintiff

---

[3] The desperation and utter futility of Defendants' arguments is evidenced by the conflicting nature thereof. Specifically, Defendants argue in one breath that there is no contract because Plaintiff failed to plead consideration and, then in the next breath, that Plaintiff failed to plead that it complied with an express obligation of the same contract.

with the loans at issue, all of which contained specified misrepresentations and/or omissions. (First Amended Complaint, p. 18). Second, as clearly stated in the Complaint, Defendant Creative Financial breached the parties' contract by failing to comply with Plaintiff's demand that it repurchase the defective loans at issue. (First Amended Complaint, p. 18). While the fact that the loans contained misrepresentations and/or omissions is pertinent to Plaintiff's breach of contract claim, the identity of the individuals that made said misrepresentations (which is outlined in the loan-by-loan breakdown) is irrelevant and need not be rehashed in the specific Count in order to satisfy basic notice pleading requirements. As such, Defendants' final breach of contract and specific performance arguments also fail.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is due to be denied in its entirety. Should the Court determine, however, that some of Plaintiff's claims are due to be dismissed, Plaintiff respectfully requests that the Court dismiss said claims "without prejudice" so that Plaintiff may amend its complaint to cure any perceived pleading deficiencies.

Respectfully Submitted,

NATIONAL CITY MORTGAGE CO.

By: **/s/ Ryan Taylor**
One of Its Attorneys

David A. Elliott
Matthew T. Mitchell
Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203
(205) 251-3000

*Attorneys for Plaintiff*

Thomas K. Hanekamp
Ryan Taylor
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, Suite 2200
233 South Wacker Drive
Chicago, Illinois 60606
(312) 627-4000

RT/321515